IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-20078-JWL |
| ) | |
| ANTHONY BROOKS, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

**MEMORANDUM AND ORDER**

On March 9, 2011, a jury convicted defendant Anthony Brooks of bank robbery in violation of 18 U.S.C. § 2113. This matter presently comes before the Court on defendant's motion for a judgment of acquittal or for a new trial (Doc. # 83). For the reasons set forth below, the Court **denies** the motion.

**I.  Motion for Judgment of Acquittal**

In seeking acquittal, defendant argues that no reasonable juror could have concluded beyond a reasonable doubt that defendant was the man who robbed the bank. In resolving such a challenge to the sufficiency of the evidence, the Court must determine whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." *United States v. Doddles*, 539 F.3d 1291, 1293 (10th Cir. 2008)

(quotation omitted). The Court must "resolve any possible conflicts in the evidence in favor of the Government and assume that the jury found that evidence credible." *Id.* at 1293-94 (citation omitted). "While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Burkley*, 513 F.3d 1183, 1188-89 (10th Cir. 2008) (internal quotation omitted).

At trial, the Government submitted evidence that defendant's DNA was found on one of the plastic ties that the robber used to bind the hands and feet of two bank employees, Gwendolyn Gilbert and Mamie Sherrod. Defendant concedes that his DNA was on the tie, but at trial he pursued the following theory to explain that fact, based on testimony by Ms. Gilbert: Defendant and Ms. Gilbert were engaged a sexual relationship; they had intercourse the night before the robbery, during which defendant's semen was deposited on Ms. Gilbert and on her bed; at the time of the robbery, defendant's DNA, most likely in semen, remained on Ms. Gilbert; and defendant's DNA was transferred to the plastic tie when the tie came into contact with Ms. Gilbert. Defendant's expert testified that such a transfer was possible, and the Government's expert could not say that such a transfer could not have occurred. Therefore, defendant argues that because such an innocent explanation was possible, jurors could not reasonably have concluded that he was guilty beyond a reasonable doubt.

The Court rejects this argument. First, as noted above, under the applicable law,

the evidence supporting the conviction need not conclusively exclude every other reasonable hypothesis or negate all possibilities except guilt. Moreover, evidence other than the DNA evidence supported the conviction. The Court will briefly summarize the evidence supporting the conviction, which must be credited for purposes of this motion.

Defendant is African-American, and Mamie Sherrod (herself African-American) testified that the robber's voice was that of a black man. A police officer testified that the plastic ties were not as tight on Ms. Gilbert (with whom defendant was having a sexual relationship) as they were on Ms. Sherrod, and that Ms. Gilbert was unusually calm in the wake of the robbery. Another officer confirmed that one of the victims was upset after the robbery while the other was calm. Jerome Gilbert, Ms. Gilbert's husband at the time, also testified that Ms. Gilbert did not get emotional after the robbery and never acted as if the robbery was a significant event. He further testified that Ms. Gilbert began staying out later after the robbery. Testimony and the security video showed that the robber took money from one location at the bank after Ms. Gilbert was unable to open a safe containing less money. Cellular telephone records indicated that although defendant and Ms. Gilbert spoke by phone over 100 times in the month preceding the robbery, such calls ceased entirely following the robbery for a period of three months, after which the calls resumed. The telephone records also showed calls by defendant to his wife's phone immediately before and immediately after the robbery. The FBI case agent testified that at one point during the investigation, defendant called the agent and asked what the potential penalty was for bank robbery. The agent also testified that

defendant's body language was consistent with that of the robber as shown on a security video showing the robbery, a comparison that the jurors were able to make for themselves at trial.

Records indicated that defendant was on unemployment and had no significant income during the period before and after the robbery in December 2006. A police officer testified that he observed defendant with several thousand dollars in cash (in tens and twenties) months after the robbery, while another witness testified that in mid-2007 defendant paid him three to four thousand dollars in cash (in hundreds) from a full, one-foot-deep box that appeared to contain hundred-dollar bills in stacks.[1] Mr. Gilbert testified that in the summer of 2007 defendant stated that he had a couple hundred thousand dollars in cash at his house, which defendant indicated came from on-line ebay sales. One of defendant's witnesses admitted on cross-examination that he had seen defendant drive an Escalade.

Finally, although the Government's DNA expert could not completely rule out the possibility of a tertiary transfer of defendant's DNA to Ms. Gilbert's body and then to the plastic tie, she testified that such a transfer was highly unlikely to be the major contributor to the DNA found on the tie, especially in the absence of any of Ms. Gilbert's DNA on the tie. The Government also attacked the qualifications and credibility of

---

[1]The Court below rejects defendant's challenge to the admission of this testimony by these two witnesses concerning cash in defendant's possession. Even without such testimony, however, the evidence was sufficient to support the jury's verdict.

4

defendant's expert witness, and the jury was entitled to credit the expert testimony favoring the Government over that favoring defendant. The jury could also have reasonably disbelieved Ms. Gilbert's ability to remember details of her sexual encounter with defendant on the night before the robbery and her testimony that she only washed her face and hands, without taking a bath or shower, after the encounter she described.

The Court concludes that this evidence is sufficient to support the jury's conviction of defendant for the robbery. Accordingly, the Court denies defendant's motion for acquittal.

## II.     Motion for a New Trial

Defendant also seeks a new trial based on evidentiary rulings by the Court at trial. With respect to defendant's request for a new trial, Rule 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A motion for a new trial is not regarded with favor and is only [granted] with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (internal quotation omitted).

### *A.     Evidence of Defendant's Possession of Cash*

At trial, Brett Ferguson testified that he performed some work at defendant's house, and that defendant paid him three- to four-thousand dollars in hundred-dollar bills from a one-foot deep box filled to the top with stacks of bills that appeared to be additional hundred-dollar bills. Other evidence established that the incident took place

in June or July of 2007, or approximately six months after the robbery. Police Officer Jason Pittman testified that, in conducting a traffic stop in August 2007, he observed what appeared to be several thousand dollars in ten- and twenty-dollar bills in the console of the car driven by defendant. Before trial, the Court denied defendant's motion in limine to exclude this evidence, and at trial the Court overruled defendant's objections to the admission of this evidence.

Defendant now seeks a new trial based on the admission of this evidence. Defendant argues that these incidents were too remote in time from the date of the robbery and that neither witness could testify to a specific amount of cash possessed by defendant. Defendant further argues that he suffered prejudice from the inference that large amounts of cash denote illegal conduct, and that such prejudice was magnified by the flawed nature of the DNA that supported the conviction.

The Court rejects this argument by defendant. Defendant concedes that the possession of a large amount of cash may be relevant. *See, e.g.*, *United States v. Marx*, 485 F.2d 1179, 1183-84 (10th Cir. 1973) (citing *United States v. Brewer*, 427 F.2d 409, 411-12 (10th Cir. 1970)). The challenged testimony was especially probative in this case, as the Government presented evidence that defendant did not have any significant income during this period. Moreover, because a large amount of cash was stolen in this case, the robber could be expected to possess significant amounts of cash for a longer period of time than if the robbery involved less money. Defendant has not cited any authority supporting his argument that the six- to eight-month interval from the date of

6

the robbery made this evidence inadmissible. The Court concludes that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403; thus, the Court concludes that it did not err in admitting this evidence.

The Court also rejects defendant's argument that Officer Pittman's testimony concerning the traffic stop was too much like evidence submitted under Fed. R. Evid. 404(b) (the Government did not include this testimony in a Rule 404(b) notice). The Court prohibited the Government from presenting any details concerning the stop (in fact, the officer's testimony suggested that the passenger of the car was the target of the stop). Moreover, defendant refused the Court's offer of a limiting instruction, which would have lessened any potential for unfair prejudice. The Court denies this basis for defendant's motion for a new trial.

### B.   *Chain of Custody of DNA Evidence*

Defendant also seeks a new trial based on his argument that the Court erred in admitting the DNA evidence "because the Government failed to prove that the items tested were adequately safeguarded from contamination." Defendant essentially challenges the sufficiency of the chain of custody, based on the fact that the officer did not wear gloves when he cut the plastic ties, which remained on the floor for over 50 minutes while various persons walked through the room; and the fact that neither CSI officer had a present recollection of collecting that evidence from the scene. The Court rejected defendant's chain-of-custody argument in overruling defendant's objection at

trial, and it now rejects the argument as a basis for a new trial.

>The Tenth Circuit has recently set forth the law governing this issue:
>
>>When evidence is unique, readily identifiable and relatively resistant to change, the foundation need only consist of testimony that the evidence is what the proponent claims. When, however, the evidence is not readily identifiable and is susceptible to alteration by tampering or contamination, the trial court requires a more stringent foundation entailing a chain of custody of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with.
>>
>>The chain of custody need not be perfect for the evidence to be admissible. Where the chain of custody is imperfect, deficiencies go to the weight of the evidence, not its admissibility; once admitted, the jury evaluates the defects and, based on its evaluation, may accept or disregard the evidence. Thus, whether the government ultimately laid a sufficient foundation for the chain of custody of [the evidence at issue] was a decision to be made by the jury.

*United States v. Yeley-Davis*, 632 F.3d 673, 683 (10th Cir. 2011) (citations and internal quotations omitted). In this case, evidence established that the plastic ties remained undisturbed on the floor until they were collected by CSI Officer Nash, who testified that he must have collected the evidence because it was placed in an envelope filled out by him. There was no evidence suggesting any likely contamination, such that defendant's DNA was somehow placed on the tie or another person's DNA was removed. As noted by the Tenth Circuit, evidence concerning the chain of custody need not be flawless, and the deficiencies argued by defendant go only to the weight of the evidence, and not to its admissibility. Accordingly, the Court concludes that it did not err in admitting this evidence, and defendant's motion for a new trial is therefore denied.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for a judgment of acquittal or a new trial (Doc. # 83) is **denied**.

IT IS SO ORDERED.

Dated this 26th day of August, 2011, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
