IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,        )
                                 )
          Plaintiff / Respondent, )
                                 )
     v.                          )        Case No. 10-20078-JWL
                                 )        Case No. 14-2624-JWL
ANTHONY BROOKS,                  )
                                 )
          Defendant / Petitioner. )
                                 )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant's pro se petition for relief pursuant to 28 U.S.C. § 2255 (Doc. # 159).  For the reasons set forth below, the Court **denies** the petition with respect to the first, second, fourth, and fifth claims asserted therein.[1]  With respect to defendant's third claim relating to plea negotiations, the Court retains the petition under advisement, pending a hearing on that claim to be set by separate order.

### I.    Background

A jury convicted defendant of committing bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and the Court sentenced defendant to a term of imprisonment of 188

---

[1]Because the petition and records of this case conclusively show that defendant is not entitled to relief, the Court need not conduct a hearing on those claims.  *See* 28 U.S.C. § 2255(b).

months.  The Tenth Circuit affirmed the conviction.  *See United States v. Brooks*, 727 F.3d 1291 (10th Cir.), *cert. denied*, 134 S. Ct. 835 (2013).

On December 18, 2014, defendant timely filed his Section 2255 petition, by which he seeks vacation of his conviction and sentence.  Defendant alleges ineffective assistance by his trial counsel, Mark Thomason.  Defendant subsequently filed a motion to amend his petition to add six affidavits and a new expert report as supporting evidence.  By Memorandum and Order of April 17, 2015, the Court granted the motion as it pertained to the new affidavits.  The motion remained pending with respect to the expert report to allow defendant time to submit a signed, sworn, and legible copy of the report.  Defendant has now submitted such a copy; accordingly, the motion to amend (Doc. # 172) is granted with respect to the addition of the expert report, with the same limitation expressed in the Court's previous order—because the assertion of any new claim would be untimely, the Court confines its consideration to the issues raised in defendant's original petition.

## II.  **Analysis**

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  *See* 28 U.S.C. § 2255(b).  "To establish ineffective

assistance of counsel, [a] [d]efendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).  In his petition, defendant asserts five distinct claims of ineffective assistance of counsel, which the Court addresses in turn.

### A.   <u>Continuance</u>

Defendant first claims that his trial counsel's performance was deficient because he failed to seek a continuance during the Government's cross-examination of defendant's expert, Stephanie Beine.  During that examination, Ms. Beine was asked about certain statements contained in three journal articles, although the articles themselves were not admitted into evidence.  With respect to the first article, Ms. Beine testified that several other later studies had refuted some of the contents of the article, but when asked if she could identify any such articles, she stated, "Not off the top of my head, no, but I could find out."  Ms. Beine also testified that there were scholarly articles concerning the transfer of body fluids on which she relied in forming her own conclusions, but when asked to identify those articles, Ms. Beine stated that she didn't have them with her, but that she could call her laboratory and have them sent to her.  Defendant argues that his counsel should have requested a continuance to allow Ms. Beine time to identify specific articles and to respond more ably to questions about the three articles used by Government counsel.

The Court concludes that because a continuance was not warranted, counsel did not act unreasonably in failing to request one during or after the cross-examination of Ms. Beine. Ms. Beine knew that she would be offering her opinions about the possibility that defendant's DNA was first transferred to a Gwendolyn Gilbert, a bank teller with whom he had had sexual intercourse the night before the robbery, then secondarily transferred from Ms. Gilbert to a plastic tie used to bind her during the robbery. Thus, Ms. Beine had ample opportunity to identify and produce any scholarly articles that supported her conclusions. Defendant notes that the three articles used by Government counsel had not been identified in discovery, and he argues that Ms. Beine needed time to respond to such surprise exhibits. Defendant concedes, however, that the Government was not required to identify in discovery such articles that it intended to use in cross-examination. Moreover, Ms. Beine testified that she was familiar with each of the three articles, and thus she was not surprised by having to address them—indeed, she agreed that it was "not a total surprise" to see one of the articles in front of her on cross-examination. Ms. Beine further testified that she *agreed* with particular conclusions stated in each of the three articles; thus, Ms. Beine had no reason to identify articles to refute those particular conclusions. Finally, the Court's conclusion that trial counsel did not act unreasonably is supported by the fact that, as noted by trial counsel (who provided a sworn affidavit), a request for such a continuance could give the jury the false impression that defendant's expert was unprepared.

The Court also concludes that defendant did not suffer the requisite prejudice

from any failure to request a continuance.  First, because no continuance was warranted, as discussed above, the Court would have denied any such request.  Second, the Court cannot conclude that a continuance would have resulted in a different outcome at trial because defendant has not explained or provided evidence to show how Ms. Beine's testimony would have differed had a continuance been granted.  In fact, shortly after Ms. Beine indicated that she could find material that refuted some content in the first article used in her cross-examination, the Court took a 15-minute recess.  Despite that opportunity, however, Ms. Beine did not identify such material when her cross-examination resumed or on redirect.

Accordingly, the Court denies this first claim that defendant's trial counsel rendered ineffective assistance.

### B.   *Prosecutorial Misconduct in Closing Argument*

For his second claim of ineffective assistance, defendant argues that his counsel should have objected to improper closing argument by Government counsel that amounted to prosecutorial misconduct.  Specifically, defendant objects to Government counsel's rhetorical questions asking whether Ms. Gilbert was involved (wittingly or unwittingly) in facilitating the robbery by defendant.  Defendant argues that such argument improperly lacked evidentiary support.

The Court concludes that Government counsel's argument was not improper and was supported by evidence; thus, trial counsel did not act unreasonably in failing to object to that argument.  The Tenth Circuit, in affirming defendant's conviction and

rejecting a sufficiency-of-the-evidence argument, noted the following evidence of Ms. Gilbert's possible involvement: Ms. Gilbert was in a romantic relationship with defendant, who was linked to the crime by DNA and other evidence; records showed that the frequent telephone communication between defendant and Ms. Gilbert ceased entirely for a period beginning shortly before the robbery; the fact that defendant waited to enter the bank until after Ms. Gilbert had disabled the alarm suggested a familiarity with procedures at the bank; an officer testified that the plastic tie binding Ms. Gilbert's hands was looser than the ties binding the other captured teller, and one plastic tie was removed without being cut, which evidence suggested that the robber treated Ms. Gilbert more favorably during the robbery; the robber asked for the other teller's car keys, but did not ask the same of Ms. Gilbert, even after the other teller had no keys to give him; Ms. Gilbert was unable to open one safe that contained relatively little money, but was able to open another that contained far more money; and Ms. Gilbert appeared unusually calm to an officer immediately after the robbery. *See Brooks*, 727 F.3d at 1305-06. Such evidence provided a basis for the reasonable inference that Ms. Gilbert was involved in the robbery. Moreover, counsel could reasonably have decided not to object (even if an objection were warranted) so that opposing counsel (or possibly the Court) would not have the opportunity to identify and focus on all such evidence providing a basis for the argument in question. Finally, because the Court would have overruled an objection by defense counsel, defendant cannot establish the requisite prejudice here. The Court denies this claim.

C.      *Plea Negotiations*

For his third claim of ineffective assistance of counsel, defendant argues that his counsel, Mr. Thomason, failed to advise him of a plea offer from the Government that would have resulted in a five-year sentence.  Defendant relies chiefly on *Missouri v. Frye*, 132 S. Ct. 1399 (2012), in which the Supreme Court held that defense counsel has a duty to communicate formal plea offers to his client.  In response, the Government relies on an affidavit by Mr. Thomason, who states that although he discussed a possible plea with Government counsel, the Government did not actually make a plea offer.  In his reply brief and responsive affidavit, defendant does not dispute that the Government made no formal plea offer, but he argues that Mr. Thomason should have advised defendant of any plea discussions and should have continued to explore reaching a plea deal.

The Court reviews the evidence submitted by the parties on this issue.  Mr. Thomason submitted an affidavit in which he states as follows: There was no plea offer from the Government.  In February 2011, Mr. Thomason and Government counsel discussed the possibility of a plea deal, and Mr. Thomason stated then that the only possibility he could see was a binding plea pursuant to Fed. R. Crim. P. 11(c)(1)(C).  Mr. Thomason then had an e-mail exchange with Government counsel on February 24, 2011.  At 6:08 p.m., Government counsel e-mailed Mr. Thomason and asked, "Were you serious when you mentioned an 11(c)(1)(C) plea?"  Mr. Thomason then talked on the telephone with defendant for 35 minutes, beginning at 7:06 p.m., during which

conversation Mr. Thomason told defendant that there was no firm offer from the Government, but that there were talks. Also during that conversation, Mr. Thomason discussed the application of the sentencing guidelines and the fact that the Government might wish defendant to cooperate to receive a sentence of five years or less. Then at 7:47 p.m., Mr. Thomason responded by e-mail to Government counsel's question about a plea, stating, "[I]'m sure he would consider it if it was 5 or less." At 7:48 p.m., Government counsel asked by e-mail, "Can you get him in tomorrow for a 5K1.1 proffer?" At 7:55 p.m., Mr. Thomason responded, "[H]e would not do that." In the last e-mail of the exchange, at 7:57 p.m., Government counsel stated as follows: "How serious are we about him taking five years? I don't want to spin my wheels when I have other things to do." Mr. Thomason states that he then talked on the telephone with defendant for 18 minutes, beginning at 8:07 p.m., during which conversation, Mr. Thomason explained that Government counsel "would need to seek the approval of his supervisors for any plea agreement and that before he was willing to go through that process, he wanted to know how serious Defendant might be about accepting a plea agreement of any kind." Mr. Thomason further states that the result of his discussion with defendant was that defendant would not accept a plea and wanted to go to trial.

Mr. Thomason does not indicate in his affidavit whether he responded to the last inquiry from Government counsel or whether there were any other plea discussions. Although Mr. Thomason does not state when such discussions took place, he states that he did advise defendant that, under the sentencing guidelines, his exposure in the event

8

of a conviction at trial was a term of imprisonment between 15 and 20 years, and that if the Government offered a five-year binding plea, defendant should seriously consider taking it.  Mr. Thomason states that he also spoke to defendant about the possibility of cooperating and receiving a reduced sentence under U.S.S.G. § 5K1.1, but that defendant stated that he was not interested in cooperating, particularly since the target of the cooperation would have been Ms. Gilbert.  Mr. Thomason states that defendant did not tell him that he wanted to plead guilty or that he wanted Mr. Thomason to pursue plea negotiations or press for a formal offer, and that defendant maintained his innocence and his desire to go to trial.

With his affidavit, Mr. Thomason has provided a copy of his e-mail exchange with Government counsel.  He has also provided a call record for his telephone showing four calls on February 24, 2010: a call to a number ending in 3007 at 7:06 p.m. lasting one minute; an incoming call from that same number at 7:06 p.m. lasting 35 minutes; a call to a number ending in 7537 at 8:06 p.m. lasting one minute; and an incoming call from the 3007 number at 8:07 p.m. lasting 18 minutes.

Government counsel has not provided his own affidavit concerning any plea discussions with Mr. Thomason.  Rather, he merely states in his brief that defense counsel is correct that the Government did not make a plea offer; that he would have needed supervisory approval for any plea agreement; and that he would not have wanted to "spin his wheels" procuring such approval until defendant's interest was known.

In his own affidavit and his sworn petition and reply brief, defendant states as

follows: After the initial discussions in February 2010 between Mr. Thomason and Government counsel referenced in Mr. Thomason's affidavit, he spoke by telephone with Mr. Thomason, who told him that Government counsel wanted to know if he was interested in a five-year offer.  That was his only discussion with Mr. Thomason about plea negotiations.  Mr. Thomason did not call him during the e-mail exchange on February 24 and did not discuss those e-mails with him.  Mr. Thomason did not advise him concerning the sentencing guidelines, did not give him any details about a possible plea, did not discuss the benefits or risks of a plea, and did not mention cooperation with the Government.  Defendant did not tell Mr. Thomason that he would not accept a plea or that he absolutely wanted to go to trial.  He would have accepted a five-year plea offer under Rule 11(c)(1)(C).  Defendant also stated that although the 7537 telephone number called by Mr. Thomason one time on February 24 (for one minute) was his number, the 3007 number involved in the other three calls that day was not associated with him.

This evidence presents a factual dispute.  In particular, the evidence is disputed concerning the information Mr. Thomason gave defendant concerning plea negotiations with Government counsel, the advice Mr. Thomason gave defendant concerning a possible plea deal, whether Mr. Thomason and defendant discussed a plea involving cooperation, and whether Mr. Thomason contacted defendant during the e-mail exchange with Government counsel.  In addition, the factual record does not reveal the full extent of the negotiations between Mr. Thomason and Government counsel, as the e-mail exchange concludes with a question from Government counsel, and Mr. Thomason has

not stated in his affidavit whether he had further communications with Government counsel. Although the Government argues that defendant would not agree to a plea involving cooperation, there is no evidence that the Government would not have agreed to a plea deal that did not include cooperation; in fact, according to the e-mail exchange, Government counsel asked about defendant's interest in a five-year term even after Mr. Thomason stated that defendant would not make a Section 5K1.1 proffer.

The Government acknowledges that a factual dispute exists, but it argues that the Court need not resolve that dispute because there was no formal plea offer made in this case (a fact that is not disputed). The Government has not cited any authority, however, that directly supports an argument that a defense counsel's duty does not extend beyond the communication of a formal offer to his client.

In *Frye*, the Supreme Court confirmed that the Sixth Amendment right to adequate assistance of counsel extends to the plea bargain process. *See Frye*, 132 S. Ct. at 1407-08. Specifically, the Court held in *Frye* that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *See id.* at 1408. The Court further stated:

> The prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences. First, the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations. Second,

11

> States may elect to follow rules that all offers must be in writing, again to
> ensure against later misunderstandings or fabricated charges. Third,
> formal offers can be made part of the record at any subsequent plea
> proceeding or before a trial on the merits, all to ensure that a defendant has
> been fully advised before those further proceedings commence.

*See id.* at 1408-09 (internal citations omitted). This language seems to presuppose a

formal settlement offer; but in this passage, the Court is merely describing ways in which

a government or a court may head off a possible claim that defense counsel failed to

communicate a formal plea offer. The Court in *Frye* did *not* hold that defense counsel

had no duty of adequate representation in the absence of a formal plea offer. To the

contrary, the Court expressly stated the case before it presented only the circumstance

of a formal plea offer and thus did not present the occasion or necessity to define the

duties of defense counsel regarding the plea bargain process in all respects. *See id.* at

1408.

Unlike the Government, defendant does cite cases that directly address this

question whether a defense counsel has a duty to provide adequate representation

concerning plea negotiations that do not result in a formal plea offer from the

Government. In *United States v. Polatis*, 2013 WL 1149842 (D. Utah Mar. 19, 2013),

the court was persuaded by the following argument by the defendant: "[E]ven if a firm

offer is not conveyed to defense counsel, when the government indicates it is willing to

negotiate a resolution in a case, defense counsel has a duty to engage in the negotiation

process. Counsel can be constitutionally ineffective in the plea negotiation process if

they fail to convey to the defendant the government's articulated willingness to resolve

a case by negotiation or have proposed a resolution to the case." *See id.* at *10 n.16. The court found such reasoning consistent with the language and implications of *Frye* and its companion case, *Lafler v. Cooper. See id.*

In *United States v. Merlino*, 2014 WL 793987 (D. Mass. Feb. 28, 2014), the court noted that a majority of district courts had held that a formal plea offer under *Frye* must consist of something more than preliminary oral communications. *See id.* at *4 (citing cases). Some such courts have emphasized the prosecutor's lack of authority to bind the government without supervisory approval. *See id.* The court noted, however, that the court in *Polatis* had "demonstrated a willingness to adopt a broad view of *Frye* premised on the integral role of plea bargains in the criminal justice system." *See id.* The Court then concluded that a hearing was necessary because a determination could not be made on the record concerning whether plea discussions "had reached a sufficient level of formality to implicate the Sixth Amendment concerns expressed in *Frye*." *See id.* at *5.

In addition, since *Frye* was decided, at least three federal courts of appeal have decided claims of ineffective assistance of counsel in the plea bargaining process—in cases involving only informal plea offers and discussions—under the two-part *Strickland* test without any suggestion that the Sixth Amendment would not apply in the absence of a formal offer. *See Cook v. United States*, 2015 WL 3482958 (11th Cir. June 3, 2015) (unpub. op.); *Ramirez v. United States*, 751 F.3d 604, 608 (8th Cir. 2014); *Merzbacher v. Shearin*, 706 F.3d 356, 364-70 (4th Cir. 2013).

Thus, the Court cannot conclude that defendant may not pursue this claim in the

absence of a formal plea offer from the Government.  The Supreme Court emphasized in *Frye* that the plea bargain process was a critical stage with respect to which defense counsel has a duty to provide adequate representation under the Sixth Amendment.  If defense counsel acted unreasonably during that process and defendant can establish that a plea agreement would have resulted if not for that deficient performance, the Court sees no reason why the usual two-part *Strickland* test should not be applied.  It may be more difficult for a defendant to establish the necessary prejudice in the absence of a formal plea offer, since the defendant would be required to show that the Government would in fact have made a particular offer, that the defendant would have accepted it, and that the Court would have accepted the plea agreement.  *See Frye*, 132 S. Ct. at 1410-11 (discussing required showing for prejudice); *see also Merzbacher*, 706 F.3d at 369-70 (plea offer's "nascence figures prominently in the calculus" of determining prejudice).  Defendant's claim in not necessarily foreclosed, however, by the absence of a formal plea offer.

Until the facts are determined in this case, the Court need not decide how far plea negotiations must proceed before the Sixth Amendment imposes particular duties on defense counsel.  Specifically, the Court must determine the extent of the plea negotiations between Mr. Thomason and Government counsel and what occurred in conversations between Mr. Thomason and defendant.  Thus, the Court will conduct an evidentiary hearing to determine whether Mr. Thomason acted unreasonably in the plea bargaining process and, if so, whether defendant can establish the necessary prejudice.

By separate order, the Court will set the hearing and will appoint counsel to represent

defendant on this claim.  Until that hearing, the Court retains defendant's petition as it

relates to this claim under advisement.

D.    *Variance*

In his fourth claim, defendant asserts that his trial counsel should have objected

to an improper amendment to or variance from the indictment.  Defendant argues that

his indictment was effectively amended to include a conspiracy charge by evidence,

argument, and instructions relating to Ms. Gilbert's involvement in the robbery.  The

Court denies this claim.

A constructive amendment of an indictment occurs "when the terms of an

indictment are in effect altered by the presentation of evidence and jury instructions

which so modify essential elements of the offense that there is a substantial likelihood

that the defendant may have been convicted of an offense other than the one charged in

the indictment."  *See United States v. Rosalez*, 711 F.3d 1194, 1210 (10th Cir. 2013)

(internal quotations omitted).  A variance arises when the evidence at trial establishes

facts different from those alleged in the indictment.  *See id.*  In this case, the jury was not

required to find a conspiracy or that Ms. Gilbert was involved in order to convict

defendant of the robbery; therefore, the elements of the offense were not altered, and no

constructive amendment occurred.  Nor did a variance occur, as the indictment did not

preclude Ms. Gilbert's involvement.  Accordingly, because any such objection would

have been futile, trial counsel did not act unreasonably in failing to make such an

15

objection, and the requisite prejudice cannot be shown.

### E.   *Foundation of Expert Opinions*

Defendant claims that his trial counsel rendered ineffective assistance in failing to object at trial to certain testimony by the Government's expert DNA witness, Bethany Stone.   Specifically, defendant argues that two opinions by Ms. Stone were impermissibly speculative and lacked a proper scientific basis under Fed. R. Evid. 702. Defendant first challenges Ms. Stone's testimony that the biological material that she swabbed and found was "touch DNA."   Defendant also challenges Ms. Stone's testimony that it was "very highly unlikely" that defendant's DNA was secondarily transferred to the plastic tie through contact with Ms. Gilbert.  Defendant also argues that his trial counsel should have objected to those opinions as new opinions not contained in Ms. Stone's written reports.  In support of this claim, defendant has submitted a written report (through an amendment to his original petition) by a new expert, Suzanna Ryan, who did not testify at trial.

The Court first addresses Ms. Stone's opinion that the biological material was touch DNA.  Defendant argues that Ms. Stone did not conduct any tests to determine the type of DNA involved and that her testimony therefore represented improper speculation.  Ms. Stone's opinion was not without basis, however—she testified that because she noticed no fluid on the plastic ties, she swabbed for skin cells, or "touch DNA."   Defendant has not provided any expert evidence that that opinion was unreliable.   Indeed, defendant's new expert, Ms. Ryan, refers to the DNA sample

including defendant as a "'touch' DNA type sample." In her report, Ms. Ryan has not offered any opinion that Ms. Stone should have swabbed the plastic ties in a different manner. Thus, there is no basis to conclude that this testimony by Ms. Stone was inadmissible. Accordingly, defendant's counsel did not act unreasonably in failing to object to that testimony as unreliable, and because the Court would not have excluded the testimony, defendant cannot show the requisite prejudice.

The Court next addresses Ms. Stone's opinion that secondary transfer was "very highly unlikely" in this case. Defendant argues that this opinion lacked foundation and was speculative. Again, however, Ms. Stone did articulate a basis for that opinion—Ms. Stone noted that defendant was the major contributor of DNA to the plastic tie that also contained other DNA, and she testified that with secondary transfer, the person without direct contact to the object would most likely be a minor contributor, not the major contributor. Moreover, the literature used by Government counsel to cross-examine defendant's trial expert, Ms. Beine, offered some support for that testimony, and as noted above, Ms. Beine agreed with those statements from the literature.

Defendant relies on the new expert report by Ms. Ryan, which does contain criticisms of various opinions and procedures by Ms. Stone. Ms. Ryan offers the opinion that secondary transfer was a possibility in this case, and she states that, according to some literature, it is not possible to determine whether secondary transfer has occurred from the amount of DNA or whether a person is a major or minor contributor. The fact that one may not be able to determine definitely whether secondary transfer occurred,

however, does not mean that its occurrence may not be more or less likely based on the amount of DNA. Thus, Ms. Ryan's report does not directly contradict Ms. Stone's testimony concerning the *likelihood* (not the possibility) of secondary transfer in this case. Moreover, even if Ms. Ryan did disagree concerning that likelihood, such a disagreement would bear on the weight to be given Ms. Stone's testimony and not on its admissibility, as Ms. Stone's opinion has not been shown to have lacked a sufficient basis. Accordingly, because defendant has not shown that this opinion by Ms. Stone should have been excluded from the evidence, defendant's trial counsel did not act unreasonably in failing to object to that testimony, and defendant cannot show prejudice here.

The Court also rejects defendant's argument that these two opinions improperly went beyond the opinions contained in Ms. Stone's written reports. Defendant has not explained how these opinions were new and why an objection on that basis would have had merit. Defendant has not shown that Ms. Stone authored any reports purporting to contain all of her opinions to which she would testify. Nor has defendant shown that Ms. Stone's failure to disclose all such opinions violated some discovery obligation. Moreover, just as the Tenth Circuit concluded on direct appeal, even if there were a discovery violation here, defendant "has failed to present any evidence of bad faith on the part of the government or any evidence of prejudice such that a sanction would have been warranted." *See Brooks*, 727 F.3d at 1301. Defendant's trial expert, Ms. Beine, testified that she discussed the case with Ms. Stone prior to trial and could have asked

any questions about her reports.  Finally, defendant has not shown that a continuance to deal with the "new" opinions would have led to a different result here—even after all this time, defendant's new expert has not directly refuted either opinion offered by Ms. Stone.  Accordingly, defendant has not shown either that his counsel acted unreasonably in failing to object on this basis or that such an objection would have altered the outcome.

### III.    Certificate of Appealability

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).[2]  To satisfy this standard, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *See Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).  Because it is clear that defendant is not entitled to relief on the constitutional claims that the Court has denied herein, the Court denies a certificate of appealability in this case with respect to those

---

[2]The denial of a Section 2255 petition is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

claims.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion to amend his petition (Doc. # 172) is **granted** as it relates to the submission of a new expert report, as set forth herein.

IT IS FURTHER ORDERED BY THE COURT that defendant's petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 (Doc. # 159) is hereby **denied** with respect to the first, second, fourth, and fifth claims asserted therein.

IT IS FURTHER ORDERED THAT defendant's petition is retained under advisement with respect to defendant's third claim relating to plea negotiations.  By separate order, the Court will set a hearing on that claim and appoint counsel for defendant to represent him on that claim.

IT IS SO ORDERED.

Dated this 6th  day of October, 2015, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge