IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff / Respondent, | ) | |
| | ) | |
| v. | ) | Case No. 10-20078-JWL |
| | ) | Case No. 14-2624-JWL |
| ANTHONY BROOKS, | ) | |
| | ) | |
| Defendant / Petitioner. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This matter came before the Court on March 16, 2016, for an evidentiary hearing on the remaining claim in defendant's petition for relief pursuant to 28 U.S.C. § 2255 (Doc. # 159). Upon consideration of the evidence presented and for the reasons set forth below, the Court **denies** the petition with respect to defendant's claim of ineffective assistance of counsel relating to plea negotiations, and thus the petition is hereby denied in its entirety.

### I.   **Background**

A jury convicted defendant of committing bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and the Court sentenced defendant to a term of imprisonment of 188 months. The Tenth Circuit affirmed the conviction. *See United States v. Brooks*, 727 F.3d 1291 (10th Cir.), *cert. denied*, 134 S. Ct. 835 (2013).

Defendant filed a petition under Section 2255, by which he sought vacation of his conviction and sentence based on his claim of ineffective assistance by his trial counsel, Mark Thomason. By Memorandum and Order of October 6, 2015, the Court denied the petition with respect to four claims of ineffective assistance, but it ordered an evidentiary hearing on defendant's claim relating to plea negotiations. *See United States v. Brooks*, 2015 WL 5837636 (D. Kan. Oct. 6, 2015).

At the hearing, the Court received into evidence a copy of the following e-mail exchange that occurred on February 24, 2011, less than one week before trial, between Mr. Thomason and the prosecutor, Leon Patton:

| | |
|---|---|
| LP [6:08 p.m.]: | Mark, Were you serious when mentioned [*sic*] an 11(c)(1)(C) plea?  Leon |
| MT [7:47 p.m.]: | i am sure he would consider it if it was 5 or less. |
| LP [7:48 p.m.]: | Can you get him in tomorrow for a 5K1.1 proffer? |
| MT [7:55 p.m.]: | he would not do that |
| LP [7:57 p.m.]: | How serious are we about him taking five years? I don't want to spin my wheels when I have other things to do. |

The Court also received into evidence Mr. Thomason's telephone records that show five calls on February 24, 2011, during the time of the e-mail exchange:  a two-minute call to defendant's cell phone number at 7:02 p.m.; a one-minute call to a number ending in 3007 at 7:06 p.m.; a 35-minute call from the 3007 number to Mr. Thomason at 7:06 p.m.; a one-minute call to defendant's cell phone number at 8:06 p.m.; and an 18-minute call

from the 3007 number to Mr. Thomason at 8:07 p.m.  Mr. Thomason's billing records for the case were admitted, and they included an entry for 1.2 hours on February 24, 2011, for "Conf. with [defendant] re stipulations, recent discovery, and witness interviews."  The records also contained 19 other entries that referenced conferences or calls with defendant prior to trial.

Defendant testified as follows:  Prior to this case, defendant had entered into plea agreements on multiple occasions to resolve charges in state courts.  At the beginning of the case, he told Mr. Thomason that he would rather take a plea deal, but Mr. Thomason stated that it was not yet time to discuss such things.  Defendant never told Mr. Thomason that he would not plead or that he wanted to proceed to trial.  He later had one very short conversation with Mr. Thomason in which Mr. Thomason stated, without further detail, that the Government was going to give him a five-year deal.  There was no discussion, in that conversation or at any time, about a proffer or cooperation, his chances at trial, possible sentences, or advice concerning a possible plea agreement.  Mr. Thomason simply indicated in that short conversation that he would get back to defendant about the deal.  The five-year figure in the e-mail came from defendant.  He had no further conversations with Mr. Thomason about a possible plea deal.  He told various people who provided affidavits in support of this petition that Mr. Thomason rejected the five-year deal.  After the one short conversation, he never asked Mr. Thomason about the plea possibility, even as a jury was selected and his trial began.  Nor did defendant raise the issue of a possible plea agreement with the Court at trial or at

sentencing. His understanding up to the time of trial was simply that plea negotiations were continuing with his attorney. He did not call Mr. Thomason from the 3007 number, and that number is not associated with him. He would have accepted a five-year offer, even if conditioned on cooperation. He possibly would have accepted a deal with a longer term.

Defendant also called as a witness at the hearing a criminal defense attorney, who testified that, in representing a client, he would seek to secure the best possible plea offer from the Government and that he would communicate with his client about any such negotiations.

The Court admitted into evidence six affidavits that had been submitted with defendant's petition. Five of the affidavits were very similar in content and language. The affidavits generally stated, with some minor variations, (a) that defendant had stated that his attorney had told him that the Government was offering a five-year plea deal; (b) that defendant was excited and was going to accept the deal; (c) that he was waiting to hear more details about the deal from his attorney; and (d) that nothing more was said about a deal until the attorney rejected the deal and the case proceeded to trial. In a couple of cases, the affiant stated that he or she had expected to testify at trial, that defendant then indicated that such testimony would likely not be needed because of the plea deal. One affidavit was executed by Gwendolyn Gilbert, a bank teller who was present during the robbery and with whom defendant has been romantically involved since before the robbery. Ms. Gilbert stated that she witnessed defendant talk to Mr.

4

Thomason on the telephone in Fall 2010 and that Mr. Thomason stated that the Government was offering a five-year plea bargain; that defendant was excited and planned to accept the deal; and that while they waited on details about the plea deal, Mr. Thomason told them that he had declined the plea deal and that they would proceed to trial.

Mr. Patton testified on behalf of the Government as follows: He was very interested in obtaining information from defendant about the crime or any other criminal activity. Mr. Patton was especially interested in obtaining information about any involvement by Ms. Gilbert, as there was evidence that the bank robbery was aided by inside information. He believed he could have indicted Ms. Gilbert, but he did not do so because he didn't feel comfortable taking the case against her to trial.[1] The sentencing guidelines suggested a sentence of at least 15 years in this case for defendant, and he would usually agree to a reduction as substantial as one required to result in a five-year term only if the defendant agreed to cooperate and provide information. If Mr. Thomason had indicated that defendant would agree to a five-year deal, Mr. Patton would have counter-offered with some greater term of imprisonment, particularly if the defendant was unwilling to cooperate. He would have needed approval from his superiors for any plea deal, although he likely would have secured such approval if he

---

[1] The Court admitted into evidence a letter from Mr. Patton to Ms. Gilbert's attorney, on which Mr. Thomason was copied, in which Mr. Patton stated that he would like to know what defendant and Ms. Gilbert would say about each other's involvement in the crime.

believed the deal to be appropriate. He could not recall any further discussions with Mr. Thomason after the e-mail exchange, nor could he locate any evidence that such further communications took place.

Finally, Mr. Thomason testified as follows: Defendant insisted throughout that he was actually innocent of the charged crime. He discussed with defendant the application of the sentencing guidelines and possible sentences, including the possibility of reducing his sentence by agreeing to cooperate and provide information to the Government. Defendant never indicated any interest in a plea deal, and they agreed on presenting a defense at trial. Defendant never asked him to pursue plea negotiations. Before he responded to the e-mail from Mr. Patton, Mr. Thomason contacted defendant and spoke to him for much longer than two minutes, as shown by the calls in the phone records. He called to inquire how serious defendant was about a plea agreement, and he indicated to defendant that the Government might require cooperation as a condition of any agreement. Defendant told him to see what the Government would do in terms of a plea. Mr. Thomason chose the five-year figure arbitrarily. He had previously discussed the possibility of a proffer of information with defendant, but defendant did not want to cooperate, as defendant indicated that he was innocent and thus had no information to give. Defendant knew that Ms. Gilbert, his girlfriend, would be the target of any request for cooperation. Thus, Mr. Thomason, when responding to Mr. Patton's e-mail, knew that defendant had no interest in cooperating. Mr. Thomason never rejected any five-year offer from the Government.

## II.    **Analysis**

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *See* 28 U.S.C. § 2255(b).  "To establish ineffective assistance of counsel, [a] [d]efendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

Defendant claims that Mr. Thomason's representation was constitutionally deficient with respect to plea negotiations with the Government.  Defendant relies chiefly on *Missouri v. Frye*, 132 S. Ct. 1399 (2012), in which the Supreme Court held that the Sixth Amendment right to adequate assistance of counsel extends to the plea bargain process. *See Frye*, 132 S. Ct. at 1407-08.  Specifically, the Supreme Court held in *Frye* that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *See id.* at 1408.

The parties agree that the Government did not make a formal plea offer to defendant in this case.  Nevertheless, in its previous order, the Court concluded that defense counsel has a duty to provide adequate representation concerning plea

negotiations that do not result in a formal plea offer from the Government, and it therefore allowed defendant to pursue this claim despite the lack of a formal offer here. *See Brooks*, 2015 WL 5837636, at *5-6 (citing cases). The Court further noted: "It may be more difficult for a defendant to establish the necessary prejudice [as required under the two-part *Strickland* test] in the absence of a formal plea offer, since the defendant would be required to show that the Government would in fact have made a particular offer, that the defendant would have accepted it, and that the Court would have accepted the plea agreement." *See id.* at *6.

Based on the evidence presented at the hearing, the Court concludes that defendant cannot satisfy either prong of the *Strickland* test in this case. First, the Court cannot find by a preponderance of the evidence that Mr. Thomason's representation was unreasonable with respect to plea negotiations with the Government. Defendant argues that Mr. Thomason should have gone beyond the one e-mail exchange with Mr. Patton in exploring a possible plea deal. Mr. Thomason testified credibly, however, that defendant had shown no interest in pleading guilty and had stated that he would not cooperate by providing information to the Government. Mr. Thomason further testified that he communicated with defendant during the e-mail exchange but did not tell defendant that the Government had in fact offered a five-year deal; the Court finds that testimony to be credible, especially in light of the fact that, as the parties agree, no five-

8

year offer was ever made by the Government.[2]

Defendant has not offered any evidence that further plea discussions occurred between Mr. Thomason and the Government.  Nor has defendant sufficiently rebutted the evidence that he was not interested in pleading guilty in this case.  Defendant testified that early in the case he indicated his interest in a plea deal.  It is not plausible, however, that after Mr. Thomason allegedly told him that the Government would agree to a five-year deal, he never brought up the subject again with Mr. Thomason, to check on the status of the agreement or to wonder why a trial was commencing.  If defendant was truly interested in and excited for a five-year plea offer, as he maintains, it is hard to believe that he would have sat through a pre-trial limine conference and jury selection without bringing up the subject of the (purportedly) pending plea deal with either his attorney or the Court, particularly in light of the fact that defendant's previous criminal cases had ended with plea agreements before trial.  Thus,  defendant's testimony that he conveyed an interest in a plea agreement to Mr. Thomason is not credible.

Defendant's story is also implausible as it relates to any argument that Mr.

---

[2]The phone records show that two very short calls by Mr. Thomason to defendant's telephone number were immediately followed on both occasions by longer calls to Mr. Thomason from the 3007 number.  Thus, despite defendant's testimony that he did not use the 3007 number, the Court finds by a preponderance of the evidence that defendant did call Mr. Thomason back, most likely from that number, and engage in lengthy conversation with him during the e-mail exchange.  Mr. Thomason's testimony to that effect was unequivocal and credible.  Mr. Thomason's billing records do not support defendant's position to the contrary, as argued by defendant, as the entry for that date does reference a 1.2 hour conference with defendant that could include telephone calls made during the e-mail exchange.

Thomason declined a five-year plea deal (as defendant originally argued in his petition, and as defendant purportedly told the affiants) or refused to pursue a plea agreement because he wanted to try defendant's case. If indeed Mr. Thomason did not want the case to end in a plea, it is not reasonable to believe that he would have told defendant that the Government had offered a five-year deal if the Government had in fact made no such offer. Thus, defendant's testimony that Mr. Thomason told him the Government had made such on offer is not credible.

Defendant's credibility was further damaged by inconsistencies in his testimony. As an example, defendant first testified that he never asked Mr. Thomason about a plea deal after the one telephone conversation; then he testified that he did ask about a plea deal during jury selection; then he testified again that did not ask Mr. Thomason about a deal during jury selection.

The Court gives little weight, if any, to the affidavits submitted by defendants. As an initial matter, the affiants did not testify at the hearing, and there was no suggestion that they were unavailable to do so. Thus, because defendant did not make these witnesses available for cross-examination, their statements carry less weight. Moreover, the affidavits rely almost entirely on statements to the affiants by defendant, whose credibility the Court has found lacking. The similar phrasing in a number of the affidavits further suggests that the affiants were not simply relating things in their own words, but were instead saying whatever defendant (who admittedly requested the affidavits) told them to say. The Court also lends little weight or credibility to Ms.

Gilbert's affidavit, as she is involved in a relationship with defendant.

The affidavits are also inconsistent with defendant's own testimony. For instance, Ms. Gilbert stated that defendant spoke with Mr. Thomason about a plea offer from the Government in Fall 2010; defendant testified, however, that his lone conversation with Mr. Thomason on that subject occurred in 2011, much closer to trial, and there is no evidence that plea discussions took place in 2010. The affidavits also suggest that Mr. Thomason told defendant that he declined the Government's plea offer, but defendant testified that he had no further discussions with Mr. Thomason about the purported offer. Again, the inconsistencies within defendant's evidence undermines the credibility of that evidence.

Accordingly, based on the evidence, the Court finds that Mr. Thomason did discharge his duty to communicate with defendant concerning any plea negotiations. In light of defendant's unwillingness to plead or to cooperate, the Court further finds that Mr. Thomason acted reasonably with respect to the pursuit of a plea deal from the Government.

Second, even if the Court were to find that Mr. Thomason's representation fell below a standard of reasonableness with respect to plea negotiations on defendant's behalf (it does not so find), defendant has failed to show the necessary prejudice. The Government did not make any plea offer, either formally or informally, and defendant has not shown by a preponderance of the evidence that the Government would have made a particular offer that defendant would have accepted. Mr. Patton testified credibly

that he would not likely have agreed to a five-year term of imprisonment unless defendant agreed to cooperate and provide information, and Court finds that defendant was unwilling to agree to that condition. Mr. Thomason's testimony that defendant had no interest in cooperating is highly credible in light of the fact that Ms. Gilbert (who had retained counsel), with whom defendant had a relationship, was the obvious target of any such request for cooperation. Mr. Patton further testified credibly that he would have countered any five-year offer with an offer involving a longer term, and defendant has not shown that he would have accepted a longer term (defendant testified only that he would have considered a longer term, and his testimony was not credible at any rate). The Court credits Mr. Thomason's testimony that defendant maintained his innocence and thus had no interest in a plea deal. Thus, the Court cannot find the necessary prejudice here; relief cannot be based on mere speculation that something different might have occurred if Mr. Thomason had engaged in further plea negotiations with the Government.

Accordingly, the Court finds that defendant has failed to satisfy either prong of the test for ineffective assistance of counsel under *Strickland*, and the Court thus denies this remaining claim from defendant's Section 2255 petition.


### III.    Certificate of Appealability

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability when

it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).[3]  To satisfy this standard, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *See Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).  Because it is clear that defendant is not entitled to relief on the constitutional claim that the Court has denied herein, the Court denies a certificate of appealability in this case with respect to that claim.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 (Doc. # 159) is hereby **denied** with respect to the third claim asserted therein, and the petition is thus denied in its entirety.

IT IS SO ORDERED.

Dated this 23rd day of March, 2016, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[3]The denial of a Section 2255 petition is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).